```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Davis-Giovinzazzo              :    CIVIL ACTION
Construction Company, Inc.     :
                               :    06-1270
    v.                         :
                               :
Tatko Stone Products, Inc.     :
```

**Joyner, J.**                                   **April 18, 2007**

### MEMORANDUM AND ORDER

Presently before the Court are Davis-Giovinzazzo Construction Company, Inc.'s ("DGCC") Motion to Dismiss/Strike Portions of Defendant's Counterclaim ("DGCC Mot.") (Doc. No. 9), Tatko Stone Products, Inc.'s ("Tatko") Response (Doc. No. 10), and Tatko's Motion to Amend/Correct Complaint, Counterclaim and Third Party Claim (Doc. No. 15).  For the reasons below, the Court concludes that it lacks subject matter jurisdiction over this matter.  The Court therefore DISMISSES WITHOUT PREJUDICE DGCC's Complaint and DENIES as MOOT both motions.

### Background

This is a contract dispute.  DGCC, a Pennsylvania corporation with its principal place of business in Pennsylvania, and Tatko, a New York corporation with its principal place of business in New York, had entered into an agreement which required Tatko to supply and deliver "natural cleft slate" (also called "green slate") stone to DGCC for a project in Piscataway, New Jersey.  See Complaint ¶¶ 6, 7.  For this stone, DGCC agreed to pay Tatko $75,153.  See Complaint, Ex. 1 ("Purchase Order").

DGCC claims that Tatko breached their contract by failing "to supply the [green slate] stone as required." Complaint ¶ 8.  And to finish the project, DGCC now estimates that it will need to "expend in excess of $150,000 to procure replacement stone . . . ." Complaint at ¶ 11.  To recover these "cover damages," DGCC filed this diversity suit here in the Eastern District of Pennsylvania.

Tatko answered DGCC's Complaint, asserting both "affirmative defenses" and counterclaims.[1]  Among its numerous defenses, Tatko challenged whether this Court has subject matter jurisdiction and the propriety of venue in the Eastern District of Pennsylvania.  See Tatko's Answer, Counterclaim and Third Party Complaint ("Tatko's Ans.") (Doc. No. 4) "Affirmative Defenses" at ¶¶ 2, 4.  DGCC moved to dismiss/strike Tatko's counterclaims sounding in tort based on the "economic loss rule."[2]  See DGCC Mot. at ¶ 12.  In considering DGCC's motion, the Court requested additional briefing from the parties on which state's substantive law

---

[1] Tatko's six counterclaims are for: (1) breach of contract, (2) fraud and deceit, (3) conversion, (4) quantum meruit/unjust enrichment, (5) breach of contract under UCC Article 2 and (6) violations of Unfair and Deceptive Business Acts and Practices.

[2] The "economic loss rule" prevents plaintiffs "from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995).

applied.[3]  See Oct. 4, 2006 Order (Doc. No. 17).  Both parties submitted the requested briefing but Tatko specifically questioned whether this Court could exercise diversity jurisdiction by challenging DGCC's claimed damages. See Tatko's Second Memorandum in Support of its Opposition ("Tatko Second Memo.") (Doc. No. 20) at 3 n.1.  Tatko averred that "DGCC accepted and installed delivery of the first five (5) deliveries of unique cut to size green slate and made payments under the contract to [Tatko] of approximately $46,000." Id.  Naturally this cast doubt over DGCC's claim that its damages will be in excess of $150,000 given that the total contract price was for slightly more than $75,000.  The Court thereafter requested further briefing (and appropriate evidence) on two issues: (1) DGCC was ordered to detail how it determined that its damages will be $150,000 (or otherwise exceed $75,000, excluding interest and costs); and (2) both parties were ordered to brief the issue of whether venue was proper in this district. See Dec. 20, 2006

---

[3]  This was necessary for at least two reasons: (1) the purchase order did not contain a choice of law provision; and (2) the parties failed to identify which state's substantive law applied.  Being that the parties are incorporated in two different states (New York and Pennsylvania), that performance was to take place in a third (New Jersey) and that it was unclear where the contract was formed (Pennsylvania, New York, or New Jersey), it was reasonable that an argument could be made that any one of these three states' laws could apply.

Order (Doc. No. 21).[4] That round of briefing proved fruitless, and the Court requested both another round of briefing on these issues and scheduled an evidentiary hearing for February 7, 2007. See January 25, 2007 Order (Doc. No. 25).[5]

### Discussion

#### *A. Standard for assessing whether the amount in controversy is satisfied*

The party seeking to invoke the jurisdiction of the federal courts has the burden of establishing that it exists. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004). In this case that burden rests with the Plaintiff – DGCC. DGCC maintains that this Court properly has subject matter jurisdiction over this matter because diversity jurisdiction exists pursuant to 28 U.S.C. 1332(a) ("Section 1332(a)"). Diversity jurisdiction exists if there is both complete diversity between the parties and the amount in controversy exceeds $75,000, excluding interests and costs. See 28 U.S.C. § 1332(a).

---

[4] Tatko never filed a formal motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Tatko did, however, challenge whether diversity jurisdiction exists both in its answer and supplemental briefings. And in any event, a court may at any time raise the issue of whether it properly has subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3). The Court ordered this supplemental briefing because Tatko raised a factual challenge to DGCC's claimed amount of damages.

[5] The pertinent details of this hearing and the parties' supplemental submissions are discussed below.

-4-

The parties agree that there is complete diversity (i.e. that the parties are citizens of different states);[6] the dispute is whether the amount in controversy satisfies the statutory minimum.

A defendant may wage either a facial or factual challenge on the court's subject matter jurisdiction. See Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  To withstand a facial challenge requires little of the plaintiff and permits little inquiry by a court; a plaintiff need only point to the allegations in her complaint that relate to the amount in controversy (or more generally subject matter jurisdiction).  And as a general rule, the district court must accept as true these allegations.  Therefore, a plaintiff's demand ordinarily will control if it is made in good faith. See State Farm Mut. Auto. Ins. Co. v. Powell, 87 F.3d 93, 96 (3d Cir. 1996) (citation omitted).  So were Tatko waging a facial challenge, DGCC's Complaint would readily survive.  DGCC, after all, seeks damages of $150,000, and there is no evidence that its claim was not made in good faith.  But DGCC is not so fortunate.  Tatko is challenging the factual basis underlying DGCC's claimed damages.

A factual challenge affords a court greater latitude in assessing whether subject matter jurisdiction exists. See

---

[6] The statutory grant of diversity, not Article III of the Constitution, requires complete diversity. See, e.g., Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 584 (1999)

Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir. 1977).  No longer bound to accept a plaintiff's allegations as true, a court may consider evidence outside of the pleadings and weigh conflicting testimony to determine whether jurisdiction is proper. See Gould Elec. Inc., 220 F.3d at 176 (citations omitted); Mortensen, 549 F.2d at 891 ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.").  A factual challenge therefore obligates a plaintiff to produce sufficient evidence to justify the amount of her claims. See Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997) (quoting Columbia Gas Transmission Corp., 62 F.3d at 541 (3d Cir. 1995)).  Accordingly, the district court must ensure that a plaintiff has "had an opportunity to present facts by evidence or by deposition, or in an evidentiary hearing" that support her claim of jurisdiction. Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990); see also McCann v. The George W. Newman Irrevocable Trust, 458 F.3d 281, 290 (3d Cir. 2006) ("If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction.") (citation omitted).  The Court provided DGCC with three such opportunities.

In considering either a factual or facial challenge to the amount in controversy, the question for the Court is whether it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) ("*Red Cab*"); see also Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997).[7]  The Third Circuit has explained that to properly apply this test requires the district court to dismiss a complaint only if it "is certain that the jurisdictional amount cannot be made." Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995).

This appears to be little more than a restatement of the *Red Cab* test.  It offers no guidance on how to apply the "legal certainty" test.  The best the Court can understand (and apply) this test is that a plaintiff fails to allege the statutory minimum of Section 1332 if, *as a matter of law*, she is not entitled to the amount she seeks even if she were to succeed on each of her claims.  A simple example might be this: Eva seeks $25,000 in compensatory damages and $100,000 in punitive damages,

---

[7] *Samuel-Bassett* clarified that district courts in the Third Circuit should adhere to the phrasing "legal certainty" when considering challenges to the amount in controversy. See Samuel-Bassett, 357 F.3d at 397-98 ("Many of the variations [used by the district courts] are purely semantical . . . . [W]e recommend that when the relevant facts are not in dispute or findings have been made the District Courts adhere to the 'legal certainty' test . . . .").

but the state law upon which she bases her claim does not permit punitive damages.  In that case, it would be a "legal certainty" that Eva's claims do not exceed the statutory minimum.  See, e.g., Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046-50 (3d Cir. 1993) (plaintiffs failed to satisfy the requisite amount in controversy when their claim for punitive damage against a trustee is not cognizable under Pennsylvania law); Smoot v. Mazda Motors of America, Inc., 469 F.3d 675, 676 (7th Cir. 2006) ("When the complaint includes a number, it controls unless the plaintiffs recovering that amount in the litigation would be legally impossible.") (citing Rising-Moore v. Red Roof Inns, Inc., 435 F.3d 813, 815-16 (7th Cir. 2006) (alterations omitted)).[8]

This litigation does not present that situation, however.  There is no statutory cap on the amount of damages that a party can recover in a common law contract action.[9]  And so it's not possible for the Court to simply look at DGCC's contract claim

---

[8] Wright and Miller's treatise suggests that a contract limiting the "plaintiff's possible recovery" or "independent facts" showing that the only basis for plaintiff's claimed damages was to obtain federal court jurisdiction are two other situations which "clearly meet the legal certainty standard for purposes of defeating the court's subject matter jurisdiction." 14B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction ("Wright & Miller") 3d § 3702 nn. 86, 87, 89 (and accompanying text).

[9] It should be noted that the purchase agreement also does not limit DGCC's potential damages.

(its pleadings) and conclude that it is a "legal certainty" that DGCC's recovery would be for $75,000 or less.

But all is not lost. In a separate decision (pre-dating *Red Cab*), the Supreme Court held that "the party alleging jurisdiction [must] justify [its] allegations by a preponderance of the evidence." McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). On first blush it seems that this is a separate standard from *Red Cab*'s legal certainty test. And so one might think that the only inquiry for the court is to ask whether the party seeking a federal forum can demonstrate by a preponderance of the evidence that subject matter jurisdiction is proper. This inclination would be wrong, however.

The Third Circuit has held that *Red Cab* and *McNutt*'s holdings are reconcilable. See Samuel-Bassett, 357 F.3d at 397 ("Rather than reading articulations of the standard as variations, we believe that the holdings in these cases may be reconciled."). The key consideration is whether there are any factual issues to be resolved. If so, *Samuel-Bassett* instructs the district courts to:

> [R]esolve those [factual] issues [using] the *McNutt* preponderance of the evidence standard . . . . Once findings of fact have been made, the court may determine whether *Red Cab*'s legal certainty test for jurisdiction has been met.

357 F.3d at 398 (citing McNutt, 298 U.S. at 189; Red Cab, 303 U.S. at 289).

Apparently then a district court must first determine whether the party seeking to be in federal court can establish subject matter jurisdiction by a preponderance of the evidence. But regardless of that finding, the court is then to apply Red Cab's legal certainty test. See Samuel-Bassett, 357 F.3d at 398 ("In short . . . when the relevant facts are not in dispute or *findings have been made* by the District Courts [they apply] the 'legal certainty' test . . . .") (emphasis added). With this directive in mind, the Court now considers whether it has subject matter jurisdiction over DGCC's Complaint.

## B. Application of the standard

As noted above, the Court provided DGCC with three opportunities to present evidence that would support its jurisdictional claim that the amount in controversy exceeds $75,000, excluding interest and costs. The first was by way of a December 2006 order in which the Court gave DGCC nearly a month to submit the appropriate evidence. See Dec. 20, 2006 Order. DGCC failed to do so.[10]  But despite this ineptitude, the Court

---

[10] Indeed, DGCC's counsel represented that although DGCC "indicated that it was able to demonstrate its damages[,] the supporting documents have not been provided to counsel to date." Plaintiff's Supplemental Memorandum of Law Submitted in Accordance with the Court's December 20, 2006 Order ("DGCC Jan. Memo.") (Doc. No. 24) at 2.  DGCC's counsel made this representation despite the fact that DGCC filed suit on March 24, 2006 and counsel had nearly ten months to obtain the necessary documentation from DGCC that would establish (or support) its claimed damages.  DGCC never bothered to explain to the Court (or Tatko) why this was the case.

nevertheless gave DGCC a second chance to submit evidence (and briefing) on the issue of subject matter jurisdiction. <u>See</u> Jan. 25, 2007 Order (Doc. No. 25). The Court also scheduled an evidentiary hearing for February 7, 2007 during which DGCC would have a third chance to present witnesses and any additional evidence to support its assertion that his Court could properly exercise diversity jurisdiction. Having now considered DGCC's additional submissions and the testimony of its witnesses, the Court concludes that DGCC has failed to establish by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum of $75,000. <u>See</u> <u>McNutt</u>, 298 U.S. at 189. It is therefore a legal certainty that Plaintiff cannot recover an amount in excess of Section 1332's statutory minimum. <u>See</u> <u>Red Cab</u>, 303 U.S. at 289; <u>Samuel-Bassett</u>, 357 F.3d at 397.

At the February 7, 2007 hearing, DGCC called two witnesses and introduced documentary evidence in order to establish that it had suffered damages in excess of $150,000. Neither the witnesses nor documentary evidence, however, were helpful to DGCC's cause. The documentary evidence was in particular unhelpful. For reasons unknown, DGCC elected to introduce

---

This type of lawyering is unacceptable. Both counsel and a client have a responsibility to actively prosecute a matter or disband the effort before wasting both judicial resources and the time of any adverse parties. It is inexplicable that a court should have to request multiple rounds of briefing on an issue as fundamental as subject matter jurisdiction before a party finally decides to respond.


invoices for purchases of green slate made by a different company - Davis-Giovinzazzo Masonry Company, Inc. ("Davis Masonry") – in order to establish DGCC's damages.  While it is an interesting coincidence that Davis Masonry (like DGCC) bought green slate (from Sheldon Slate Products), and had it delivered to a Piscataway, New Jersey construction site, the invoices fail to establish that these costs were damages that *DGCC* suffered as a result of Tatko's refusal to make any further shipments.  There is absolutely no evidence in the record establishing that DGCC and Davis Masonry are the same legal entity.  And so all the Court has are invoices detailing the business activities of a company that happens not to be the Plaintiff.  Accordingly, the Court finds this evidence as not probative of DGCC's damages.[11]

---

[11] The Court also rejects DGCC's attempt to introduce labor costs as part of its damages during the February 2007 hearing. DGCC's Complaint makes clear that it was seeking damages solely for the costs associated with *procuring* replacement stone. See Complaint ¶ 11.

As for DGCC's demand for attorneys' fees, this request is not cognizable under Pennsylvania, New Jersey or New York law because the purchase order does not expressly require that the breaching party is liable for such fees.  Each of these jurisdictions follow the American Rule, which makes each party responsible for its own attorneys' fees, absent an express contractual or statutory provision to the contrary. See Merlino v. Delaware County, 728 A.2d 949, 951 (Pa. 1999) ("[Pennsylvania] has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception.") (citation omitted); N. Bergen Rex Transp. v. Trailer Leasing Co., 730 A.2d 843, 848 (N.J. 1999) ("New Jersey has a strong policy disfavoring shifting of attorneys' fees. We have generally adhered to the so-called American Rule, meaning that the prevailing litigant is

DGCC's witnesses fared no better in establishing its jurisdictional allegations. The first witness, Chris Aaron, admitted that DGCC had accepted slightly less than $50,000 in deliveries from Tatko (on a contract worth slightly more than $75,000). Mr. Aaron did not testify that DGCC had rejected any of Tatko's deliveries. He didn't testify that DGCC returned the stone that Tatko delivered. Indeed, Mr. Aaron did not offer any testimony or evidence that DGCC did not use the stone that Tatko delivered at the Piscataway, New Jersey construction site.[12]

As for DGCC's second witness, Saverio Agresta, the Court finds his testimony to lack any credibility. Mr. Agresta was unable to identify which entity brought suit against Tatko. He could not recall the basis for the suit. He also testified that he did not review any documents before appearing as a witness. The Court finds that Mr. Agresta's lone contribution to the proceedings was to waste its time as well as that of the parties.

---

ordinarily not entitled to collect a reasonable attorneys' fee from the loser.") (internal quotations and citations omitted); Clarendon Nat'l Ins. Co. v. Compuplan, LLC, 03-CV-7966, 2006 U.S. Dist. LEXIS 88161, at * 12 (S.D.N.Y. Dec. 5, 2006) ("Under the general rule in New York, attorneys' fees are incidents of litigation and a prevailing party may not collect them from the losing party unless such an award is authorized by agreement between the parties, statute or court rule.") (citations and internal quotations omitted). And so, the Court may no consider this demand in assessing the amount in controversy.

[12] Tatko included six bills of lading with its answer to establish that deliveries were made and accepted by DGCC. See Tatko's Ans., Ex. C. DGCC did not offer any testimony rebutting this evidence.

DGCC has failed to establish that this Court may properly exercise diversity jurisdiction over its contract claim against Tatko.  Neither its witnesses nor documentary evidence establish by a preponderance of the evidence that it suffered damages in excess of the statutory minimum of $75,000 (i.e. that the amount of controversy exceeds the jurisdictional floor of $75,000). Indeed, DGCC offered no evidence that would support a finding that this Court properly has subject matter jurisdiction. Accordingly, the Court declines to exercise diversity jurisdiction over this matter because it appears to a legal certainty that DGCC's claim is really for less than the jurisdictional amount.  An appropriate Order follows.

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Davis-Giovinzazzo               :       CIVIL ACTION
Construction Company, Inc.      :
                                :       06-1270
        v.                      :
                                :
Tatko Stone Products, Inc.      :
```

**ORDER**

AND NOW, this 18th day of April, 2007, upon consideration of the parties' pleadings, motion papers and supplemental submissions, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint for lack of subject matter jurisdiction and **DENIES** as **MOOT** all outstanding motions (Doc. Nos. 9, 15).  The Court further **ORDERS** the Clerk of Court to **CLOSE** this matter.

```
                                     BY THE COURT:


                                      s/J. Curtis Joyner
                                     J. CURTIS JOYNER,       J.
```